UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARQUIS D. NEWSON,

    Plaintiff,

v.                                         Case No. 16-C-1084

MICHAEL LOPEZ and
CHRISTINA MARSHALL,

    Defendants.

**ORDERING GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (REVISED)**[1]

This case raises the interesting question of whether police officers who bring a dog trained to detect drugs, as well as firearms, to assist in executing a search warrant authorizing them to search for and seize firearms, violate the homeowner's Fourth Amendment right against unreasonable searches and seizures. Although the *pro se* plaintiff has asserted other claims, they clearly lack any merit. On the closer and more interesting question, I conclude on the undisputed facts of the case that no violation occurred. I therefore grant the defendants' motion for summary judgment and deny the plaintiff's motion.

**I. BACKGROUND**

Plaintiff Marquis Newson brought this 42 U.S.C. § 1983 civil rights action against two City of Milwaukee police officers, alleging violations of his constitutional rights arising out of his arrest for the crimes of felon in possession of a firearm and possession of marijuana and cocaine with intent

---

[1] Revised to correct case citation name on page 8.

to deliver. Newson is currently serving a state sentence at Stanley Correctional Institution. He claims that two City of Milwaukee Police Officers, Defendants Michael Lopez and Christina Marshall, subjected him to an illegal search, arrest and detention in violation of the Fourth Amendment, and that the arresting officer failed to obtain a judicial determination of probable cause for his arrest within 48 hours of his detention as required under *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Newson also asserted a *Monell* claim against Milwaukee County; however, summary judgment was granted for Milwaukee County on January 25, 2017, and it was dismissed from the case at that time. This decision will address the remaining claims against the City police officer defendants.

Officer Michael Lopez and Officer Christina Marshall worked for the Milwaukee Police Department (MPD). Officer Lopez is trained in firearms investigations and enforcement. Officer Marshall is trained as a K-9 handler. Both have extensive experience with the MPD. Defendants' Proposed Findings of Fact ("DPFOF"), ¶¶ 1–4, ECF No. 56. On September 25, 2014, Officer Lopez swore to and signed an affidavit in support of a search warrant of 2525-27 North 38th Street, Milwaukee, Wisconsin, which was the residence of Marquis D. Newson. *Id*. at ¶ 5. The warrant application was supported by an affidavit signed by Officer Lopez which recounted the information he had received from a confidential informant with a history of reliability, who stated he had seen Newson, a convicted felon, in possession of a firearm within the past 14 days at Newson's residence located at 2525-27 North 38th Street. ECF No. 57-1. Although the premises was an upper/lower duplex, the informant told Officer Lopez that Newson had access to both units and used it as a single family residence. ECF No. 57-2 at ¶12.

2

At 3:51 p.m. on September 25, 2014, Milwaukee County Circuit Judge Janet Protasiewicz authorized a no-knock search warrant for premises. ECF No. 57-2; DPFOF at ¶ 6. The search warrant described the objects of the search as: (1) "firearms, ammunition, shell casings, receipts related to firearm/ammo purchase;" (2) "items associated with firearms, i.e., cleaning kits, holsters, ballistic vests, targets, photographs/video depicting persons in possession of firearms;" and (3) "documents, utility bills, keys, writings, cell phones, computers, books, records, receipts, notes, ledgers, receipts relating to the purchase and/or possession of firearms and/or other documentary evidence establishing who is in control of the premises." *Id*. at ¶ 7; *see also* ECF No. 57-2.

On September 26, 2014, at approximately 10:46 am, Officers Lopez and Marshall, along with nine other officers executed the search warrant on 2525-27 North 38th Street. *Id*. at ¶¶ 8–9. Officer Marshall also had Kenny, her K-9, who was trained to search for firearms, narcotics, humans, and the derivative odors of each. *Id*. at ¶¶ 9, 24. Upon the team's arrival, Newson, who had been on the porch, fled into the house. *Id*. at ¶¶ 11–12. Newson was located in the kitchen of the upper unit. *Id*. at ¶ 14. Officer Matthew Seitz conducted a search of Newson's person and discovered a sandwich baggie of white powdery substance in Newson's right front coin pocket. *Id*. at ¶ 15. Newson was taken into police custody at that time. *Id*. Officer Lopez performed a field test on the white powdery substance, which tested positive for cocaine. *Id*. at ¶ 16.

After the residence was cleared by the entry team, Officer Marshall and Kenny performed a walk-through. *Id*. at ¶ 22. Marshall knew the search warrant authorized the search for firearms, ammunition, shell casings, and extra magazines. *Id*. at ¶ 25. Officer Marshall gave Kenny the verbal command and specific scent to search for a firearm. *Id*. at ¶ 26. When searching through the house, Kenny aggressively scratched a brown box that was lying on the attic steps. *Id*. at ¶ 27. Kenny is

3

trained to perform this action when he detects the odor of narcotics. *Id*. Officer Michael Wawarzyniakowski opened the brown box and found a white five-gallon bucket with a closed lid, which he removed to find a large quantity of what appeared to be marijuana. *Id*. at ¶¶ 28–29. Officer Wawarzyniakowski opened the box after Kenny indicated he smelled narcotics because based on Officer Wawarzyniakowski's training, he knows that firearms are often kept with narcotics. *Id*. at ¶ 28. Officer Lopez performed a field test on the substance in the bucket and it tested positive for the presence of tetrahydrocannabinol and had a total weight of over 4,500 grams. *Id*. at ¶ 30. Officer Marshall and Kenny then left the residence. *Id*. at ¶ 31.

As officers continued executing the search warrant, Officer Wawarzyniakowski located a sandwich baggie in the kitchen that had two smaller baggies each containing a powdery white substance. *Id*. at ¶ 32. Officer Lopez field tested the substances, which tested positive for cocaine. *Id*. Officer Hunter located a zip lock bag in a television box in the bedroom that appeared to contain marijuana. *Id*. at ¶ 34. Officer Lopez field tested the substance and it tested positive for the presence of tetrahydrocannabinol. *Id*. Officer Wawarzyniakowski located a handgun, with ammunition inside it, in a trash can in the basement. *Id*. at ¶ 36. Newson was transported to the jail for processing. *Id*. at ¶ 37. Officer Lopez completed a probable cause statement for the arrest at approximately 4:30 on September 26, 2014. *Id*. at ¶ 38. The probable cause statement noted that Newson was currently on probation with the Department of Corrections ("DOC") and the DOC placed a hold on Newson. *Id*. at ¶ 29.

On August 15, 2016, Newson filed this federal complaint alleging violations of his civil rights during the search of his house. Newson argues that Lopez and Marshall exceeded the search warrant by using K-9 Kenny because Kenny was a "drug dog" and there were no drugs described in the

4

search warrant. Additionally, Newson argues that because the search was illegal, his arrest was also illegal. Lastly, Newson argues that his detention by Lopez was unlawful because he was detained for more than 48 hours before receiving a judicial determination of probable cause. On June 16, 2017, Newson filed for summary judgment on these issues. ECF No. 60.

On June 13, 2017, Lopez and Marshall filed for summary judgment. ECF No. 54. They argue that the search was within the limits of the search warrant, which was valid. Furthermore, they argue that Newson was lawfully arrested and detained. Lastly, they argue that they are entitled to qualified immunity.

**II. LEGAL STANDARDS**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460–61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "On review of cross-motions for summary judgment, [the court] view[s] all facts and inferences in the light most favorable to the nonmoving party on each motion." *Lalowski v. City of Des Plaines*, 789 F.3d 784, 787 (7th Cir. 2015).

**III. ANALYSIS**

**A. The Search Was Lawful**

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. A search performed pursuant to a valid warrant issued by a judge is presumptively reasonable. *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017). "In order to be valid, a search warrant must: (1) be issued by a neutral and disinterested magistrate; (2) establish probable cause that the evidence sought in the warrant will aid in obtaining a conviction of a particular offense; and (3) describe with particularity the things to be seized and the place to be searched." *Id.* at 614 (citing *Dalia v. United States*, 441 U.S. 238, 255 (1979)). "Even if one of those elements is missing, an officer is still entitled to qualified immunity if she is acting pursuant to a warrant that was authorized by a judge, and her action is reasonable." *Id. (citing United States v. Leon*, 468 U.S. 897, 920–21 (1984); *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986)). "Only when an officer seeks or obtains a warrant 'so lacking in indicia of probable cause as to render ... belief in its existence unreasonable,' may the officer face liability for damages." *Id.* (quoting *Malley*, 475 U.S. at 344–45).

It is clear from these principles that to the extent Newson is challenging the validity of the warrant under which the search was conducted, his claim fails. The affidavit submitted in support of the application for a search warrant, which recounted the information Officer Lopez had received from a confidential informant, as well as his own independent investigation, was sufficient to establish probable cause. The information that Newson had a firearm at his residence was based on the personal observation of the confidential informant, and the reliability of the informant was established for probable cause purposes by the fact that the informant had provided information that led to the issuance of at least five previous search warrants and the recovery of items the informant

6

stated would be there. This was sufficient to establish probable cause even under the old two-prong standard of *Aguillar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969), that the Court abandoned as overly rigid in *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Officer Lopez independently confirmed that Newson had previously been convicted of a felony, was under supervision of the Wisconsin Department of Corrections (DOC), and had listed the address of the duplex with the DOC as his residence. Together with the information provided by the informant, this was sufficient to establish probable cause under the "totality of the circumstances" standard adopted by the Supreme Court in *Gates*. *Id*. at 241–42. While it is true that the informant's observation of Newson with a firearm had occurred as much as two weeks earlier, that fact did not undermine the judge's probable cause determination. *See United States v. Harju*, 466 F.3d 602, 608 (7th Cir. 2006) (holding that even though three weeks passed between the gun's sighting by a confidential informant and the warrant's execution, reliance on the confidential informant was not undermined because unlike a small amount of drugs or cash, "the gun was not likely to have been sold (or consumed) during that period"). Finally, even if there was some basis to challenge the warrant's validity, the officers were clearly entitled to rely on its facial validity and thus would be immune from any liability in doing so. *Malley*, 475 U.S. at 344–45.

Newson's primary claim, however, is not to the validity of the warrant or even the fact of the search, but to the manner in which the search was conducted. Newson claims that the use of Kenny, a dog trained in the detection of drugs, to conduct the search of his house violated his Fourth Amendment rights. Newson argues that the use of Kenny was unconstitutional because Kenny was a drug-sniffing dog and the search warrant did not mention drugs. In support of his argument, Newson relies on the Supreme Court's decision in *Florida v. Jardines*, 569 U.S. 1 (2013). In

*Jardines*, the Court held that law enforcement's use of a drug-sniffing dog on the front porch of the defendant's home constituted an unconstitutional search and that a warrant based on the dog's indication of the presence of drugs was therefore invalid. Newson argues that the use of Kenny to conduct the search of his home exceeded the scope of the search authorized by the warrant in this case, and thereby violated his constitutional rights.

This case is clearly distinguishable from *Jardines*, however. In this case, unlike *Jardines*, police already had a warrant to conduct a full search of Newson's home when they arrived with Kenny. This fact is significant. The central holding of *Jardines* was that the use of a drug-sniffing dog on a homeowner's porch to investigate the contents of the home is a search that exceeds the limited permission implicitly or explicitly granted to visitors to enter upon homeowner's property. *Id.* at 5–6. Here, by contrast, police were authorized by a warrant not only to enter the home but to conduct a complete search of the home for evidence that Newson was illegally in possession of a firearm, including receipts for the purchase of firearms or ammunition, as well as evidence that he was in control of the premises such as utility bills and mail. Because the officers were already authorized to conduct a thorough search of the home, the fact that they used a dog to assist them is, at least under the circumstances of this case, irrelevant.

The fact that police had a warrant also distinguishes this case from *United States v. Whitaker*, which extended *Jardines* to the use of a drug-sniffing dog in the hallway outside the door of an apartment. 820 F.3d 849 (7th Cir. 2016). Instead of *Jardines* and *Whitaker*, this case is controlled by *Illinois v. Caballes*, 543 U.S. 405 (2005). In *Caballes*, the Court held that law enforcement officers did not conduct an illegal search when they allowed a trained drug-detecting dog to walk around a motorist's car during a traffic stop. As long as the use of the dog did not prolong the stop

8

beyond the time reasonably required to issue a traffic ticket or warning, the Court held "[a]ny intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement." *Id.* at 409. In so ruling, the Court reaffirmed its view of "a canine sniff by a well-trained narcotics-detection dog as '*sui generis*' because it 'discloses only the presence or absence of narcotics, a contraband item.'" *Id.* (quoting *United States v. Place*, 462 U.S. 696, 707 (1983)). The use of such a dog, the Court held, did not implicate Fourth Amendment concerns because "any interest in possessing contraband cannot be deemed 'legitimate,' and thus, governmental conduct that only reveals the possession of contraband 'compromises no legitimate privacy interest.'" *Id.* at 408 (quoting *United States v. Jacobsen*, 466 U.S. 109, 123 (1984)); *see also Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 628 (7th Cir. 2008) (holding that "K–9 units trained to detect contraband do not conduct a search when they sniff in an area where they are lawfully present").

It is true, as Newson claims, that the warrant obtained by Officer Lopez did not authorize him to search for drugs. An officer executing a search warrant, however, is not limited to seizing only those items specifically named in the warrant. Such an officer can also seize "evidence that, although not described in the warrant, is subject to seizure under the plain view doctrine." *Russell v. Harms*, 397 U.S. 458, 465 (7th Cir. 2005). "The plain view doctrine applies if the officer has a legal right to be in the place from where he sees the object subject to seizure, a lawful right of access to the object itself, and if the object's incriminating nature is immediately apparent." *Id.* (internal quotations and brackets omitted). The warrant in this case clearly authorized the officers to look inside the box where the marijuana was found since that is a place where a firearm, or many of the other items the warrant authorized the officers to seize, such as cleaning kits, holsters, ammunition,

9

etc., may have been located. Indeed, the firearm police were searching for was later found in a trash can in the basement. The fact that Kenny indicated the presence of drugs in the box on the stairs did not render the location off-limits in the search the officers were authorized to conduct.

It is true that police may not bring a drug detection dog along on the search in order to broaden its scope beyond what is authorized by the warrant. In other words, if the dog indicated the presence of drugs in a location the officers were not otherwise authorized to search, the plain view doctrine would not allow the officers to search that location. The fact that the odor is plainly perceptible to the dog doesn't make it plainly perceptible to the dog's handler. *See United States v. Thomas*, 757 F.2d 1359, 1367 (2d Cir. 1985) (noting that "the officers' use of a dog is not a mere improvement of their sense of smell, as ordinary eyeglasses improve vision, but is a significant enhancement accomplished by a different, and far superior, sensory instrument"). Plain view refers to plain view using human senses, not those of a highly trained dog. The dog's indication might, however, provide the officers with probable cause to obtain a second warrant that would authorize a broader search. Here, there was no need to seek a second warrant since the warrant police already had clearly allowed them to look inside the box.

For all of these reasons, I conclude that Officers Lopez and Marshall did not violate Newson's rights by bringing Kenny along when they executed the search warrant on his residence. This is especially true in light of the officers' explanation that Kenny was brought to the search because of his ability to detect firearms and explosives, as well as drugs, and Officer Marshall gave Kenny the verbal command and specific scent to search for a firearm. Finally, even if bringing Kenny did constitute a violation of Newson's rights, the absence of any clear law on the issue would entitle the officers to immunity from liability. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding

that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 572 (7th Cir. 2014) (holding police officers immune from liability under § 1983 for warrantless entry of home under belief that occupant was going to harm himself). Newson's claim concerning the search of his home is therefore dismissed.

**B. Probable Cause Determination Was Timely**

Newson also claims that his Fourth Amendment rights by failing to have a judicial determination of probable cause within 48 hours of his arrest. The Fourth Amendment requires a timely judicial determination of probable cause following a warrantless arrest. *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). A judicial probable cause determination within 48 hours of arrest will be presumed timely. *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Newson claims that his Fourth Amendment rights were violated when no probable cause determination was made within 48 hours of his arrest.

That claim has already been rejected by this court. *See* Order Granting Milwaukee County's Motion for Summ. J., ECF No. 39 at 5. Nevertheless, the court will construe this as Newson's request to reconsider its ruling. The law of the case governs a district court's discretion to reconsider a previous ruling within the same litigation if there is a compelling reason, such as a change in the law that makes an earlier ruling erroneous. *Santamarina v. Sears*, 466 F.3d 570, 572 (2006); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (explaining that "a court has the power to revisit prior decisions of its own . . . although as a rule, courts should be loathe to do so in the absence of extraordinary circumstances . . ."). Newson fails to point to any

11

extraordinary circumstances to justify the court's reconsideration on Newson's claim that he did not receive a prompt judicial determination of probable cause after arrest. In addition, any delay in the probable cause determination cannot be attributed to either of the remaining defendants. Officer Marshall was not the arresting officer, and the undisputed evidence establishes that Officer Lopez submitted his probable cause statement the same day Newson was taken into custody. It thus follows that this claim fails as well.

### III. CONCLUSION

For the reasons stated above, the court finds that Newson's claims fail as a matter of law and even if they did not, defendants would be entitled to qualified immunity. Defendants Lopez and Marshall's motion for summary judgment (ECF No. 54) is **GRANTED** and Newson's motion for summary judgment (ECF No. 60) is **DENIED**. Newson's claims against Lopez and Marshall are **DISMISSED**. The Clerk is instructed to enter judgment in accordance with this order and the previous order granting summary judgment to Milwaukee County (ECF No. 39).

Dated this __26th__ day of February, 2018, *nunc pro tunc* February 8, 2018.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court